IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

     Plaintiff,

     vs.                             No. 19-PO-3264 KG/KRS

ARNALDO CHANG-RODRIGUEZ,

     Defendant.

<u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on Defendant Arnaldo Chang-Rodriguez' appeal from the judgment and conviction entered by United States Magistrate Judge Kevin R. Sweazea on December 5, 2019. (Doc. 20). Following a bench trial, Defendant was found guilty of illegal entry without inspection in violation of 8 U.S.C. § 1325(a)(1) and aiding and abetting an alien attempting to elude inspection in violation of 8 U.S.C. § 1325(a)(2) and 18 U.S.C. § 2. *Id.* Defendant argues on appeal that the United States did not prove that he is guilty of the offenses charged. Having reviewed the briefing, the record, and the applicable law, the Court affirms Defendant's convictions on both counts.

    *I.*     *Background*

On November 9, 2019, at approximately 1:00 a.m., a United States Border Patrol sensor was activated in Sunland Park, New Mexico. (Doc. 26) at 17-18 (Transcript of bench trial). Border Patrol Agent David Kraft was on duty in a Border Patrol truck and scanned the area around the sensor with a forward-looking infrared (FLIR) camera. *Id.* at 15-16, 18. Agent Kraft observed three heat silhouettes on his screen indicating three people on foot moving north of the international boundary. *Id.* at 19. Agent Kraft alerted other agents and Border Patrol Agent

Nathaniel Bell, who was on duty nearby, proceeded on foot to the area indicated by Agent Kraft. *Id.* at 62. Agent Bell found Defendant and two others huddled on the side of an embankment near some brush. *Id.* at 63. Agent Bell asked the individuals if they were Cuban and they said they were. *Id.* at 64-65. During this time, Border Patrol Agent Victor Lomax also responded to Agent Kraft's alert and arrived to assist. *Id.* at 32-33. Agent Lomax asked the individuals if they had permission or documents to be in the United States legally and they said they did not have visas or other documentation. *Id.* at 35. However, Defendant told Agent Lomax he resided in Florida and showed the agent a document that may have been a driver's license. *Id.* at 36-37.

The individuals were transported to the Santa Teresa Border Patrol Station. *Id.* at 36. At the station, Defendant told the agents there that he had driven to the area in a white Honda. *Id.* at 66. A Border Patrol supervisor instructed Agent Bell to look for the vehicle. Agent Bell testified that he saw no vehicles in the area where Defendant and the individuals were apprehended, but he stated he did not look for the vehicle in nearby residential and commercial areas. *Id.* at 66, 80-82. The supervisor also asked Agent Bell to check for shoe prints in the area. *Id.* at 67. Agent Bell testified he followed three sets of shoe prints from the area of apprehension back to the international border and that they appeared to be traveling north. *Id.* at 69, 73-74.

Border Patrol Agent Jose Flores testified that at the station he took photographs of the bottom of Defendant's shoes and described them as having a distinctive "horseshoe" and "thin line" pattern. *Id.* at 48-49. Agent Flores went to an area 10 or 12 feet from the east end of the fence at the international boundary. *Id.* at 50. He stated he found shoe prints similar to Defendant's shoes and he took pictures of those prints. *Id.* He further testified that the prints he found indicated travel to the north. *Id.* at 52-53.

At 7:00 a.m., Border Patrol Agent John Torres came on duty, interviewed the individuals who were apprehended, and searched databases for information about them. *Id.* at 92-98. Agent Torres learned that all of the individuals were citizens of Cuba and that Defendant had earlier been allowed into the United States and was living in Florida pending a future court date. *Id.* at 94, 98. Defendant told Agent Torres the other two individuals were his girlfriend, Karla Guevara, and her mother, and that they were both citizens of Cuba. *Id.* at 94. Agent Torres testified Ms. Guevara later plead guilty to illegal entry under 8 U.S.C. § 1325. *Id.* at 95.

Defendant was charged with: Count 1, knowingly and unlawfully entering into the United States from the Republic of Mexico, at a place not designated as a lawful Port of Entry, in violation of 8 U.S.C. § 1325(a)(1); and Count 2, knowingly and unlawfully aiding and abetting an alien attempting to elude examination and inspection by immigration officers, in violation of 8 U.S.C. § 1325(a)(2) and 18 U.S.C. § 2. (Doc. 14). At the bench trial on November 26, 2019, the United States called five witnesses: Agents Kraft, Lomax, Flores, Bell, and Torres. (Doc. 26) at 3, 11. Throughout the trial, Defense counsel objected to testimony and evidence about Defendant's shoes and shoe prints on the basis it was not properly introduced as expert testimony and it was unreliable. The Magistrate Judge overruled these objections. *See, e.g., id.* at 48, 49, 52, 68, 70, 73.

At the close of evidence, counsel for Defendant moved for a directed verdict based on insufficient evidence for a conviction on either count. Specifically, counsel argued Defendant had legal permission to be in the United States, there was no evidence he left the United States, and the shoe print evidence was improperly admitted and unreliable. *Id.* at 102-03. Defendant's counsel further argued there was no evidence of any other person's intent to commit a crime and that Defendant being found with Ms. Guevara and her mother is insufficient to establish the

3

crime of aiding and abetting an alien attempting to elude inspection. *Id.* at 111-13.  The

Magistrate Judge overruled the motion for a directed verdict, finding there was sufficient

evidence to establish that Defendant crossed the international boundary from Mexico into New

Mexico and that Defendant knew he was going into Mexico to aid his girlfriend and her mother

in eluding inspection.  *Id.* at 122-24.  The Magistrate Judge, therefore, found Defendant guilty of

both counts and sentenced Defendant to time served.  *Id.* at 124; (Doc. 20).

       Defendant timely filed a notice of appeal on December 18, 2019, (Doc. 21), and timely

filed his opening brief on February 3, 2020, (Doc. 27).  Defendant argues his conviction for

Count One should be reversed because the shoe print evidence is unreliable and insufficient to

prove he entered the United States and because the United States did not properly proffer Agents

Bell and Flores as experts.  (Doc. 27) at 7-12.  Defendant appeals Count Two on the basis that

the United States did not establish that Defendant intentionally associated himself with the

underlying crime or intended to help Ms. Guevara and her mother.  *Id.* at 12-13.

    *II.*    *Standard of Review*

       The Court has jurisdiction in this matter pursuant to 18 U.S.C. § 3402: "In all cases of

conviction by a United States magistrate judge an appeal of right shall lie from the judgment of

the magistrate judge to a judge of the district court of the district in which the offense was

committed."  However, "[t]he defendant is not entitled to a trial de novo by a district judge.  The

scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered

by a district judge."  Fed. R. Crim. P. 58(g)(2)(D).  The Court will review "the legal conclusions

de novo and factual findings for clear error."  *United States v. Morrison*, 415 F.3d 1180, 1184

(10th Cir. 2005).  When reviewing the sufficiency of the evidence, the Court reviews "whether a

reasonable jury could find the defendant guilty beyond a reasonable doubt, given the direct and

circumstantial evidence, along with reasonable inferences therefrom, taken in a light most favorable to the government." *United States v. DeChristopher*, 695 F.3d 1082, 1091 (10th Cir. 2012) (citation omitted).

   III.   *Discussion*

        A.  *Count One – Unlawful Entry*

Section 1325(a)(1) imposes criminal penalties on: "Any alien who (1) enters or attempts to enter the United States at any time or place other than as designated by immigration officers … ."  8 U.S.C. § 1325(a)(1).  The Magistrate Judge found there was "strong circumstantial evidence" that Defendant entered the United States based on Agent Kraft's observations of three people moving north from the international boundary and Agent Bell's and Agent Flores' testimony and photographs showing shoe prints that matched Defendant's shoes found east of the boundary fence and going north from that area to the area of apprehension.  (Doc. 26) at 105-06, 116-21 (finding the agents' testimony credible and relying on Exhibits 3, 4, and 5).  The Magistrate Judge found "the evidence in those photographs is compelling that the defendant made the tracks shown in the photographs," and noted Agent Bell testified there were no other tracks in that area.  *Id.* at 120-21.  Therefore, the Magistrate Judge found that Defendant crossed the international boundary from Mexico into New Mexico at a place that is not a designated port of entry.  *Id.* at 122.

Defendant raises several arguments as to why the evidence presented at trial was insufficient to convict him of committing this crime.  First, Defendant contends the United States did not comply with the requirements of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), with regard to Agent Bell's and Agent Flores' testimony about the shoe print evidence.  (Doc. 27) at 8-9.  However, neither Agent Bell nor Agent Flores

5

were proffered as expert witnesses, so the expert witness requirements are inapplicable.  When considering this argument at the trial, the Magistrate Judge explained: "The agent – I mean, he's an investigating officer.  He can testify about his observations.  He's not giving opinion evidence, attaching any particular significance to anything, but he can testify as to his observations."  *See* (Doc. 26) at 48.

To the extent Defendant argues that expert testimony is required for a comparison of shoes and shoe prints, Defendant provides no authority for such a finding.  Instead, Defendant relies on a case from the Eight Circuit where two witnesses testified that they found shoe prints in a cornfield adjacent to the scene of a crime two days after the crime occurred, but they did not make any casts or photographs of the prints.  (Doc. 27) at 9 (relying on *United States v. Stabler*, 490 F.2d 345, 348 (8th Cir. 1974)).  At trial, the witnesses testified about the prints but did not compare them to any shoes and conceded there was no way to identify the prints as belonging to the defendant.  *Stabler*, 490 F.2d at 348.  The Eighth Circuit found the trial court erred in admitting the witnesses' testimony about the shoe prints, explaining such testimony is only competent "where it has been established that the footprints and shoes are distinctive enough to afford reliable comparison."  *Id.* (citing *McDonnell v. United States*, 455 F.2d 91, 95 (8th Cir. 1972)).

Defendant argues the Magistrate Judge similarly erred in allowing the agents to testify about their observations about Defendant's shoes and the found shoe prints because the United States did not establish that the prints were distinctive enough to afford a reliable comparison. (Doc. 27) at 9.  However, in comparing Defendant's shoes and the shoe prints found near the border, the agents described how the "horseshoe" and "fine line" pattern of both sets of prints matched.  *See* (Doc. 26) at 48-50, 57-59 (comparing Exhibits 2, 3, 4, and 5).  Therefore, the

agents established that the shoes and prints were distinctive enough to allow for a reliable comparison, and the Court finds no legal error by the Magistrate Judge in allowing this evidence at trial.

In addition, Defendant contends the shoe print evidence is unreliable because the area was frequently used and heavily patrolled; the agents were not trained in analyzing shoe prints; Agent Bell's and Agent Flores' testimony about the location of the shoe prints conflicted; the photographs of the shoe prints were taken by Agent Flores who was not involved in the apprehension; the shoe print evidence was not to scale so there is no way to compare the size of the shoes with the prints; the United States did not present evidence about the shoes worn by the other individuals; and the agents left the area unattended for at least an hour before Agent Bell went back to look for shoe prints. *Id.* at 9-11. First, while Agent Bell testified that the area where Defendant was apprehended was heavily patrolled, he further explained that the area is no longer frequently used, it was a calm and quiet day, and the shoe prints he matched with Defendant's shoes along with two other sets of shoe prints were "the only foot sign there." (Doc. 26) at 73, 74, 88. Regarding Agent Bell's and Agent Flores' testimony, Agent Bell testified he observed shoe prints matching Defendant's leading from the border to the point of apprehension, and Agent Flores testified the shoe prints he photographed were located approximately 12 feet north of the border just east of the end of a fence. *See id.* at 50, 54-55, 60, 72-73. Defendant does not explain how this testimony is inconsistent and the Court finds no inherent inconsistencies in the agents' testimony.

Defendant's remaining arguments about the reliability of the evidence invite the Court to reweigh the evidence. However, an appeal of a Magistrate Judge's conviction does not entitle a defendant to a trial de novo, and the court may only review factual findings for clear error. *See*

Fed. R. Crim. P. 58(g)(2)(D); *Morrison*, 415 F.3d at 1184.  The Tenth Circuit has explained that "[a] finding of fact is 'clearly erroneous' if it is without factual support in the record or if, after reviewing all the evidence, the court is left with a definite and firm conviction that a mistake has been made."  *Southwest Stainless, LP v. Sappington*, 582 F.3d 1176, 1183 (10th Cir. 2009); *United States v. Bendixen*, 2010 WL 1169758, *1 (D. Utah Mar. 24, 2010).  Moreover, "[i]n conducting this review, the court views the evidence in the light most favorable to the Magistrate Judge's ruling and must uphold any finding that is permissible in light of the evidence." *Bendixen*, 2010 WL 1169758, *1.  The Magistrate Judge's findings are supported by facts in the record and the Court finds that the Magistrate Judge did not make any mistakes in concluding that the United States met its burden of proof.  In addition, while Defendant argues he should not have been convicted of illegal entry because he had permission to be in the United States, the United States provided evidence that Defendant had been paroled in the United States pending a future court date, and he did not have any documentation allowing him to leave and return to the United States.  *See* (Doc. 26) at 94, 123-24.

        For the reasons stated above, the Court concludes that a reasonable factfinder could find beyond a reasonable doubt that Defendant is not a citizen of the United States and that he crossed the international boundary from Mexico into New Mexico at a place not designated as a port of entry.  *See DeChristopher*, 695 F.3d at 1091 (explaining that on appeal court reviews direct and circumstantial evidence, makes reasonable inferences therefrom, and views evidence in light most favorable to government).  Therefore, the Court affirms Defendant's conviction for illegal entry without inspection.

### B.  *Count Two – Aiding and Abetting*

In order to prove Defendant committed the crime of aiding and abetting an alien attempting to elude examination and inspection by immigration officers, in violation of 8 U.S.C. § 1324(a)(2) and 18 U.S.C. § 2, the United States was required to prove: (1) someone else committed the charged crime, and (2) Defendant intentionally associated himself in some way with the crime and intentionally participated in it as he would in something he wished to bring about.  *See* Tenth Circuit Pattern Crim. Jury Instr. 2.06 (2018).  Defendant argues the United States failed to meet this burden because it did not present any evidence "of any other person's intention or knowledge of committing a crime that [Defendant] would have associated with." (Doc. 27) at 13 (asserting "[t]he fact that [Defendant] was found with his girlfriend is completely insufficient to say that he was aiding and abetting that person").

The Magistrate Judge found that because Defendant "knowingly associated himself with the attempt of those other two individuals to elude inspection … the Government has proven beyond a reasonable doubt that he is guilty of the crime of aiding and abetting the attempt to elude inspection."  (Doc. 26) at 124.  Defendant argues the United States did not meet its burden because it did not provide evidence of another person's intent to commit a crime.  However, this is not an element of the crime of aiding and abetting.  Instead, as explained by the Magistrate Judge at the hearing, Defendant "has to know of the act being undertaken and intentionally involve himself in that act."  *Id.* at 112.  Moreover, the Magistrate Judge did not just rely on the fact that Defendant was found with the other two individuals.  To the contrary, the United States presented evidence that Defendant traveled from Florida to join his girlfriend and her mother, and that the three of them ran north from an area near the border and concealed themselves in the brush before they were apprehended.  *Id.* at 18-20, 23, 34, 63-64,74, 90.  Indeed, the Magistrate

Judge found this evidence "shows [Defendant's] intent to aid his girlfriend and his girlfriend's mother in eluding inspection." *Id.* at 124.

Defendant also contends the United States presented insufficient evidence that he willfully associated with a criminal venture and aided the venture through affirmative action. (Doc. 29) at 4-5 (relying on *United States v. Delgado-Uribe*, 363 F.3d 1077, 1084 (10th Cir. 2004)). Defendant is correct that the Tenth Circuit in *Delgado-Uribe* explained that in order to prove the crime of aiding and abetting, the Government must make "some showing of intent to further the criminal venture" and that "[m]ere presence at the crime scene is insufficient." 363 F.3d at 1084. However, the Tenth Circuit also has explained that for aiding and abetting, the level of participation in a criminal venture may be of "relatively slight moment" and that the evidence must just be more than that a defendant "stumble[d] into aiding and abetting liability by inadvertently helping another in a criminal scheme unknown to the defendant." *United States v. Whitney*, 229 F.3d 1296, 1303 (10th Cir. 2000); *United States v. Jones*, 44 F.3d 860, 869 (10th Cir. 1995).

Here, evidence includes that Defendant traveled from Florida, that he and the two individuals walked north from the border at a place other than a port of entry, and that they tried to conceal themselves from Border Patrol officers. This evidence makes it reasonable for a finding that Defendant did not stumble into or inadvertently help the two individuals attempt to elude immigration inspection. Defendant also states that because he "had a relationship with an individual with whom he was apprehended is not probative of aiding and abetting," and "[i]f this were the case, every individual crossing the border with a family member or friend would be guilty of aiding and abetting" which "would lead to absurd results." (Doc. 29) at 5. This argument, however, fails to account for important additional facts that were presented at the trial,

such as evidence that Defendant and the two individuals did not cross the border at a port of entry and that they took steps to conceal themselves from Border Patrol agents.  *See, e.g. United States v. Rufai*, 732 F.3d 1175, 1190-91 ("[W]e have repeatedly held that circumstantial evidence may support a jury's reasonable inference of guilty knowledge by the defendant.").

Based on the foregoing, the Court concludes that a reasonable factfinder could find beyond a reasonable doubt that Defendant intentionally associated himself with the two individuals' attempt to elude immigration inspection and that he intentionally participated in the crime.  The Court, therefore, affirms Defendant's conviction for aiding and abetting the crime of eluding immigration inspection.

*IV.*     *Conclusion*

For the reasons stated above, the Court denies all grounds for Defendant's appeal from his judgment and conviction and affirms Defendant's convictions for illegal entry without inspection in violation of 8 U.S.C. § 1325(a)(1) and aiding and abetting an alien eluding inspection in violation of 8 U.S.C. § 1325(a)(2) and 18 U.S.C. § 2.


_____
UNITED STATES DISTRICT JUDGE